UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ANA GIGNAC,
Personally and as Parent and Natural Guardian
of Renee Gignac,

                                Plaintiff,

                                                                        <u>DECISION AND ORDER</u>

                                                                        08-CV-6431L

                            v.

ONTARIO COUNTY, et al.,

                                Defendants.
_____

## **INTRODUCTION**

Plaintiff Ana Gignac ("plaintiff") brings this action against defendants Ontario County, the Ontario County Sheriff's Department, Deputy Timothy Durgan ("Deputy Durgan") (collectively "the County defendants"), and Claire's Boutique's, Inc. ("Claire's"). Pursuant to 42 U.S.C. §1981 ("Section 1981") and §1983 ("Section 1983"), plaintiff alleges that the defendants subjected her to, inter alia, race-based discrimination, false arrest, false imprisonment, and an unreasonable search, and generally violated her constitutional rights in connection with a shoplifting investigation.

Claire's now moves for summary judgment pursuant to Fed. R. Civ. Proc. 56 to dismiss plaintiff's claims (Dkt. #27), on the grounds that there was probable cause to detain the plaintiff, and that both the detention and the related search were reasonable and non-discriminatory. Plaintiff has cross-moved for partial summary judgment on her claim of false imprisonment (Dkt. #34), and in opposing the cross motion, the County defendants adopt the arguments submitted by Claire's, and further argue that the County defendants are entitled to qualified immunity. (Dkt. #39) For the reasons set forth below, Claire's motion for summary judgment (Dkt. #22) is granted, and the complaint is dismissed with respect to all defendants.

**DISCUSSION**

I.  **Summary Judgment**

Summary judgment is granted if the record demonstrates that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). *See also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). "When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-587 (1986).

II.  **Plaintiff's Section 1981 Claim Against Claire's**

Section 1981 provides that, "[a]ll persons within the United States shall have the same right . . . to the full and equal benefit of all laws and proceedings for the security of persons ans property as is enjoyed by white citizens..." 42 U.S.C. §1981. In order to establish a Section 1981 discrimination claim, plaintiff must provide proof that: (1) she belongs to a racial minority; (2) she was subject to intentional discriminatory conduct by defendants, meaning that a discriminatory motive was a "substantial" or "motivating" factor; and (3) the discrimination related to one of the protected activities to which Section 1981 refers. *See Tolbert v. Queens College*, 242 F.3d 58, 61 (2d Cir. 2001); *Brown v. City of Oneonta*, 221 F.3d 329, 339 (2d Cir. 2000); *Lauture v. IBM*, 216 F.3d 258, 261 (2d Cir. 2000). A Section 1981 "equal benefit" claim "'requires a nexus to state proceedings or laws,' even though state action is not required." *Bishop v. Toys "R" Us-NY LLC*, 2009 U.S. Dist. LEXIS 17377 at *14 (S.D.N.Y. 2009), *quoting Phillip v. Univ. of Rochester,* 316 F.3d 291, 294-95 (2d Cir. 2003). *See generally Pierre v. J.C. Penney Co.*, 340 F. Supp. 2d 308, 310-311 (E.D.N.Y. 2004) (discussing standards relating to the "[f[ew cases in this circuit or elsewhere

[that] arise under the 'equal benefit' clause of §1981," and collecting cases). In alleging that Claire's singled her out for discriminatory treatment on the basis of race, plaintiff must present some "evidence of 'purposeful and systematic discrimination' in the form of specific instances when members of a recognized group were 'singled . . . out for unlawful oppression in contrast to others similarly situated.'" *Bishop*, 2009 U.S. Dist. LEXIS 17377 at *17, *quoting Albert v. Carovano*, 851 F.2d 561, 573 (2d Cir. 1988).

The undisputed facts, construed in plaintiff's favor, fail to establish that she was "singled out" for unlawful oppression in contrast to other Claire's shoppers. On June 23, 2007, plaintiff, who alleges that she is of "Latino descent," (Dkt. #1 at ¶38), was browsing in a Claire's store at Eastview Mall, along with her two adolescent daughters. Claire's Assistant Manager Ashley Zimmerman ("Zimmerman"), who had made "over a hundred" shoplifting stops during her previous year-and-a-half of employment with Claire's, testified that she observed plaintiff remove a pair of green polka-dot hoop earrings from a display card, hold them in her hand, and then place her hand into her purse. The earrings were not seen thereafter.

When plaintiff attempted to cash out and leave the store without paying for the earrings Zimmerman believed she had seen plaintiff conceal, Zimmerman instructed plaintiff to remain in the store, and called mall security and the police. A security guard and Deputy Durgan responded and briefly questioned plaintiff in a private storage room in the rear of the store, out of the view of the public. Plaintiff also voluntarily submitted to a search of her purse, underwent a "pat-down" of her pocket area because she was unable to turn her pockets out herself, and was asked by Deputy Durgan to untuck her shirt to release any items secreted in her waistband. After the brief search failed to turn up the missing earrings, plaintiff was told she was free to leave. From start to finish, the detention lasted thirty or forty minutes. Plaintiff thereafter returned the items she had previously purchased, and left the store.

The only evidence cited by plaintiff in support of her allegation that the shoplifting investigation was discriminatory is an alleged statement attributed to Zimmerman. Plaintiff testified

that after the investigation was concluded, she asked Zimmerman why Zimmerman believed that plaintiff, as opposed to others in the "lot of people in the store" at the time, had stolen the earrings, and that Zimmerman made a statement to the effect that "you Spanish people, all you do is steal." (Dkt. #27-8 at 60). Zimmerman denies making any such statement, and claims that the only reason she detained plaintiff was because of her observations of plaintiff's conduct, which led Zimmerman to believe that plaintiff had taken a pair of earrings. (Dkt. #27-7).

Even assuming the truth of plaintiff's testimony concerning Zimmerman's alleged "Spanish people" remark, I conclude that a single racially charged remark by a store employee -- even one that suggests a belief that one's minority status predisposes him or her to steal -- is "insufficient to support an inference of a discriminatory selective-enforcement policy" by itself. *Bishop*, 2009 U.S. DIST. LEXIS 17377 at *14 (store security guard's use of a racial epithet, and his comment that "blacks steal more than whites" are insufficient to support an inference of discrimination in the alleged selective enforcement of anti-shoplifting policies and procedures, where there is no evidence that plaintiff was actually treated differently from similarly-situated non-minority customers), *aff'd*, 2010 U.S. App. LEXIS 14668 (2d Cir. 2010). In light of the fact, asserted by Claire's in its statement of undisputed facts and expressly assented-to by plaintiff, that Zimmerman's reported observations provided "reasonable ground[s]" to detain plaintiff on suspicion of shoplifting, (Dkt. #34 at ¶68), the remark attributed to Zimmerman after the fact "would [appear to] show some evidence of hostility on the part of [an employee], not disparate treatment among those similarly situated, and animus or incivility alone is insufficient to raise an inference of discriminatory treatment." *Id*. at *28. In other words, the relevant question is not whether Zimmerman expressed or even believed that "Spanish people . . . steal," but whether plaintiff has come forward with evidence in admissible form, sufficient to convince a reasonable finder of fact, that such a belief on Zimmerman's part was a "substantial or motivating factor" in Zimmerman's decision to detain plaintiff on the suspicion of shoplifting, *and* that in being so detained, plaintiff was being treated differently from other, similarly-situated, non-Hispanic shoppers in Claire's.

Notwithstanding her allegation that her detention was discriminatory, plaintiff presents no evidence that she was treated differently from any similarly-situated shoppers. She does not, for example, allege or offer evidence that that there were other customers present in the store at the time the earrings went missing, or who engaged in similar behavior to plaintiff's, who were non-Hispanic, and who were not questioned or detained. Because plaintiff offers no evidence whatsoever concerning the ethnic background and/or behavior of other customers alleged to have been in the store at the time, it would be impossible for any reasonable finder of fact to conclude that she was, in fact, treated differently from non-minority shoppers.[1] *See Rivera v. United States*, 928 F.2d 592, 608 (2d Cir. 1991) (plaintiffs alleging Section 1981 claim that police officers treated persons with Spanish surnames differently from others in the same building must come forward with evidence concerning whether other persons of Hispanic descent lived in the building, and whether they were similarly treated). In light of these circumstances, even assuming the truth of plaintiff's allegation that Zimmerman told her "Spanish people . . . steal," plaintiff cannot prove that discrimination was a "substantial or motivating" factor behind her brief detention, and/or that she was "singled out" for treatment different from that of non-minority customers in the store.

Moreover, plaintiff cites no evidence that Claire's trains its employees to act in a discriminatory manner, that any discriminatory activity Zimmerman might have undertaken was within the course of her employment, or that Zimmerman's alleged comment is in any other way attributable to a policy of Claire's. To the contrary, Claire's has submitted evidence establishing that it has trained all of its employees (including Zimmerman) to be watchful for shoplifters without regard for race or ethnicity, warning them in a written Training Aid and Loss Prevention Employee Handbook that there is no such thing as a "typical shoplifter," and that "[p]eople from all economic, educational and family backgrounds steal." (Dkt. #27-3 at 3, Dkt. #27-4 at 4).

---

[1] Plaintiff testified that among the "lot" of Claire's customers who were present at the time she was detained, she saw one person she knew, a friend named Lorraine Veras. (Dkt. #27-8 at 66-67). However, the record contains no evidence of Ms. Veras's racial or ethnic background.

Accordingly, plaintiff has failed to produce evidence sufficient to establish her claims that Claire's subjected her to intentional discrimination and/or that punitive damages against Claire's are warranted, and her Section 1981 claim is dismissed.

### III. Plaintiff's Section 1983 Claims of False Arrest and False Imprisonment Against Claire's and Deputy Durgan

Plaintiff's claim of false imprisonment against Claire's requires proof that: (1) Claire's intended to confine plaintiff; (2) plaintiff was conscious of her confinement; (3) plaintiff did not consent to be confined; and (4) the confinement was not otherwise privileged. *See Curry v. City of Syracuse*, 316 F.3d 324, 335 (2d Cir. 2003). Because state action is a necessary element of a Section 1983 claim, plaintiff must also offer evidence that there was "such a close nexus between the State and the challenged action [by Claire's] that the . . . private [actor's] behavior may be fairly treated as that of the State itself." *Bishop*, 2009 U.S. Dist. LEXIS 17377 at *29, *quoting Tancredi v. Metro Life Ins. Co.*, 316 F.3d 308, 312 (2d Cir. 2003).

Initially, the Court is not convinced that Zimmerman's request that plaintiff remain in the store, and her summoning of mall security and law enforcement, comprises a confinement with a sufficient nexus to state action to support a Section 1983 claim. *See e.g.*, *Bishop*, 2009 U.S. Dist. LEXIS 17377 at *29-*30 (acts of private individuals, such as store security guards, generally do *not* constitute state action for purposes of Section 1983); *Drayton v. Toys 'R' Us Inc.*, 645 F. Supp. 2d 149, 162-163 (S.D.N.Y. 2009) (absent evidence of a plan, prearrangement or custom of cooperation between store manager and law enforcement, a manager's summoning of law enforcement to investigate shoplifting does not expose the store to Section 1983 liability).

However, even assuming *arguendo* that Zimmerman's conduct was sufficient to "confine" plaintiff in the manner necessary to establish a constitutional claim pursuant to Section 1983, the statutory privilege under New York General Business Law §218, generally referred to as the "Shopkeeper's Statute," manifestly applies here. N.Y. Gen. Bus. Law §218.

Under the Shopkeeper's Statute, a retail establishment is not liable for detaining someone so long as:

> the person was detained in a reasonable manner and for not more than a reasonable time to permit such investigation or questioning by a . . . police officer or by the owner of the retail mercantile establishment [or] his authorized employee or agent, and that such officer, owner, employee or agent had reasonable grounds to believe that the person [detained] was committing or attempting to commit larceny . . . "Reasonable grounds" shall include . . . knowledge that a person (i) has concealed possession of unpurchased merchandise [and] a "reasonable time" shall mean the time necessary to permit the person detained to make a statement or to refuse to make a statement, and the time necessary to examine employees and records of the mercantile establishment relative to the ownership of the merchandise . . .

*Id*.

As detailed above, plaintiff testified that she handled a number of pairs of earrings while shopping at Claire's, and it is undisputed that around this time, a pair of earrings was discovered to be missing. As plaintiff was leaving the store, Zimmerman approached her and asked her to "show me where you put the earrings," and plaintiff refused. Thereafter, plaintiff was detained privately in a back room of the store for approximately a half an hour, during which Deputy Durgan arrived and, while searching plaintiff's purse with her permission, found one or two loose earring backs. Plaintiff was also asked to submit, allegedly at Zimmerman's urging, to a blouse "shake out."

Plaintiff agrees that Zimmerman had "reasonable grounds" to detain her, but argues that the overall length of the shoplifting stop (insofar as it is attributable to Zimmerman) was not reasonable. Dkt. #34 at ¶68. Plaintiff suggests that Zimmerman could have abbreviated the encounter if she had initially questioned plaintiff more clearly about what sort of earrings she was looking for, requested to search plaintiff's purse herself instead of calling mall security, and limited the search to plaintiff's purse and not extended it to her person. However, plaintiff points to no legal authority for the proposition that the "reasonable time" requirement obligates a store manager to abbreviate a shoplifting investigation stop to the fastest or most cursory search possible, or that a detention of similar length to hers is *per se* unreasonable.

Under the totality of the circumstances and in light of the undisputed facts, the shoplifting investigation to which plaintiff was subjected was supported by reasonable grounds and was reasonable in time, as a matter of law. *See e.g., Bacci v. Fairway Mkt.*, 2008 U.S. Dist. LEXIS 40534 at \*13-\*14 (S.D.N.Y. 2008) (granting summary judgment to defendant store under the Shopkeeper's Statute: plaintiff who was observed by store clerk concealing items on his person and not paying for them, who was subsequently detained for thirty minutes awaiting police response, was detained for a "reasonable time" as a matter of law).

In order to maintain her claim of false arrest against Deputy Durgan under Section 1983, plaintiff must show that Durgan violated her Constitutional or federal statutory rights – here, her Fourth Amendment right to be free from unreasonable seizures – and that he did so while acting under color of state law. *See Parratt v. Taylor*, 451 U.S. 527, 535 (1981).

To establish a claim of false arrest or a violation of civil rights arising therefrom against a law enforcement defendant, a plaintiff must prove that the underlying arrest lacked probable cause. *See Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996). Variously stated, the existence of probable cause is "a complete defense to [a civil rights action arising from an arrest]" whether it arises under Section 1983 or state law. *Bernard v. United States*, 25 F.3d 98, 102 (2d Cir. 1994).

While an arrest may not be grounded solely on a "hunch," *United States v. Patrick*, 899 F.2d 169, 174 (2d Cir. 1990), "a probable cause determination does not require proof beyond a reasonable doubt; it is the mere probability of criminal activity, based on the totality of the circumstances, that satisfies the Fourth Amendment." *Donovan v. Briggs*, 250 F. Supp. 2d 242, 251 (W.D.N.Y. 2003), *quoting Hahn v. County of Otsego*, 820 F. Supp. 54, 55 (N.D.N.Y. 1993). "Probable cause to arrest exists when the known facts are 'sufficient to warrant a person of reasonable caution in the *belief* that the person to be arrested has committed or is committing a crime.'" *Donovan*, 250 F. Supp. 2d 242 at 253, *quoting Jocks v. Tavernier*, 316 F.3d 128 at 135 (2d Cir. 2003)(emphasis in original).

Deputy Durgan responded to Claire's after a call to investigate a shoplifting claim. Upon arrival, he was informed by the store's assistant manager that she had personally observed plaintiff

handling a pair of earrings and removing them from their display card, and that the earrings were now missing. With plaintiff's consent, Deputy Durgan searched plaintiff's purse and discovered at least one loose earring back (the defendants' deposition testimony differs as to whether one or two earring backs were discovered) inside. He asked plaintiff to turn out her front hip pockets. When plaintiff stated that she was unable to do this due to the tightness of her jeans, Deputy Durgan performed a "pat-down" of the hip pockets. He also accompanied Zimmerman around the store to retrace plaintiff's steps and see if the missing earrings could be found. Although Zimmerman found at least one empty earring card in the area where said she had observed plaintiff handling the missing earrings, the earrings themselves could not be located. Finally, Durgan asked plaintiff to untuck her shirt, which would cause any items secreted in plaintiff's waistband to fall out. Durgan and Zimmerman both testified that plaintiff responded combatively, lifting her shirt and "flashing" Durgan, to which he responded with words to the effect of, "You didn't need to do that -- put [your shirt] down."[2] The search for the earrings having proved unsuccessful, Durgan told plaintiff -- who claims that up until this point she was repeatedly instructed that she was not permitted to leave -- that she was free to go.

Plaintiff has produced no evidence that the statements by Zimmerman to Durgan were not reasonably trustworthy or reliable, or that they would not have caused a reasonable officer in Durgan's position to believe that a crime had probably occurred, and that a brief investigation and/or

---

[2] Initially, plaintiff claimed in her complaint and deposition testimony that Durgan actually reached into her brassiere and ran his hands over her breasts "in an inappropriate, illegal perverted manner." (Dkt. #1 at 27, Dkt. #27-8). On the instant motion, however, plaintiff has taken the unusual step of affirmatively declining to dispute Durgan's and Zimmerman's descriptions of the blouse/bra search. Instead, plaintiff explains that in response to the summary judgment motion, she will "rely only on the [defendants'] sworn statements" as evidence of what occurred during the search of her person. (Dkt. #34-11 at 6). Because plaintiff refuses to submit evidence or testimony refuting the defendants' description of events, or to rely upon her own conflicting testimony already in the record to raise a question of fact, the Court is forced to conclude that plaintiff has presently abandoned her prior contention that the search of her person was any more invasive than defendants describe. I therefore find that plaintiff has failed to raise a material question of fact as to the breadth of the search conducted by Deputy Durgan, insofar as plaintiff was asked to "shake out" her blouse and/or exposed her bra.

search for evidence of shoplifting was reasonable and warranted.  Indeed, it is well settled that "a purported crime victim's identification of the alleged culprit will generally suffice to create probable cause to arrest." *Donovan*, 250 F. Supp. 2d 242 at 250-251.

Having found that plaintiff's arrest was supported by probable cause, I need not reach the issue of qualified immunity. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001). Nevertheless, I find that even if probable cause was lacking, the County defendants are entitled to qualified immunity.

Qualified immunity shields public officials from an action for civil damages, to the extent that their challenged acts do not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Specifically, the doctrine applies where it is "objectively reasonable" for an official to believe that his conduct did not violate such a right, in light of clearly established law and in the information possessed by the official. *See Simms v. Village of Albion*, 115 F.3d 1098, 1106 (2d Cir. 1997); *Hill v. City of New York*, 45 F.3d 653, 661 (2d Cir. 1995); *Velardi v. Walsh*, 40 F.3d 569, 573 (2d Cir. 1994).  In determining whether defendants are entitled to qualified immunity, the Court must focus on "objective circumstances rather than an officer's subjective motivation." *Bradway v. Gonzales*, 26 F.3d 313, 319 (2d Cir. 1994).

With respect to false arrest claims, an arresting officer is entitled to qualified immunity if: (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met.  *See Lennon v. Miller*, 66 F.3d 416, 420 (2d Cir. 1995); *Wachtler v. County of Herkimer*, 35 F.3d 77, 81 (2d Cir. 1994).

As noted above, the undisputed facts presented here establish that plaintiff was identified to Durgan by a store employee as having stolen earrings from a display card, and that empty display cards were found nearby and one or more loose earring backs were discovered in plaintiff's purse. Durgan's entire investigation of the shoplifting claim was conducted within approximately thirty

minutes, and involved no invasive physical searches beyond the purse search to which plaintiff consented, and a non-invasive shirt-untucking and pocket pat-down. No evidence has been presented to suggest that the investigation of plaintiff's possible theft of a pair of earrings was conducted in a manner which a reasonable officer could have believed was in violation of the plaintiff's constitutional rights, was untrustworthy, or otherwise failed to furnish probable cause for the plaintiff's brief detention. Plaintiff's false arrest claims are therefore dismissed.

**IV.     Plaintiff's Unreasonable Search Claim Against the County Defendants**

It is well settled that in order to maintain a claim against a County under 42 U.S.C. §1983, plaintiff must show that the County violated her Constitutional or federal statutory rights, and did so while acting under color of state law. *See Parratt v. Taylor*, 451 U.S. 527, 535 (1981). A municipality's liability under Section 1983 is limited, however, to "acts which the municipality has officially sanctioned or ordered. *City of St. Louis v. Prapotnik*, 485 U.S. 112, 123 (1988). As such, the challenged action must have been taken pursuant to a policy adopted by the official or officials responsible under state law for making policy in *that area* of the County's business." *Id*.

However, "[a] municipal policy may be inferred from the informal acts or omissions of supervisory officials." *Poulson v. City of North Tonawanda*, 811 F. Supp. 884, 896 (W.D.N.Y. 1993), *quoting Batista v. Rodriguez*, 702 F.2d 393, 397 (2d Cir. 1983). In order for such an inference to arise, the official's acts or omissions must be serious enough to suggest "deliberate indifference" to the plaintiff's constitutional rights: "mere lack of responsiveness, failure to supervise employees, or nonfeasance has been held insufficient to establish a causal link between a municipal custom or practice and a constitutional violation." *Poulson*, 811 F. Supp. 884 at 896, *citing Canton, Ohio v. Harris*, 489 U.S. 378 (1989).

Plaintiff's claim of municipal liability is grounded solely upon the conclusory allegation that the County has a policy or custom of failing to adequately train employees to perform body searches.

- 11 -

Plaintiff submits no evidence in support of this contention, cites no law in support of her assumption that the pocket frisk and shirt-untuck request were unduly invasive, and makes no claim that any particular County official committed a specific act or omission that effected a constitutional deprivation. Because plaintiff has failed to allege or prove that any unconstitutional policy was maintained by the County, or that such a policy gave rise to a violation of her constitutional rights, her claims against the County are dismissed.

## V. Plaintiff's State Law Claims

Plaintiff also asserts a "zone of danger" negligence claim against the defendants on behalf of her minor daughters, and slander per se against Claire's, both of which arise solely under state law. Although plaintiff's federal claims have been dismissed, the Court opts to exercise supplemental jurisdiction over these remaining claims, in the interest of judicial economy and convenience to the litigants. *See* 28 U.S.C. §1367; *Valencia ex rel. Franco v. Lee*, 316 F.3d 299, 305 (2d Cir. 2003).

While remand of state law claims to state court is often preferred as an alternative to dismissal where, as here, statute of limitations issues are implicated, *see e.g.*, *Akhtab v. BCBG Max Azria Group Inc.*, 2011 U.S. Dist. LEXIS 118606 at *4-*5 (S.D.N.Y. 2011), remanding plaintiff's state law claims here would serve no purpose. Both of the claims are defective on their face.

The slander per se claim is untimely, having been first alleged in the complaint filed September 19, 2008 (Dkt. #1), more than one year after the utterance at issue on June 23, 2007. *See* N.Y. CPLR §215(3) (statute of limitations for slander is one year); *Karam v. First Am. Bank of N.Y.*, 190 A.D.2d 1017, 1018 (4th Dept. 1993) (statute of limitations for slander claims begins to run as of the date of the utterance at issue).

Plaintiff's "zone of danger" claim, which alleges that her minor daughter was subjected to the negligent infliction of emotional distress by the County when she witnessed Deputy Durgan searching the plaintiff, does not (and based on the undisputed facts of record, could not) contain any

plausible allegations that the daughter was ever threatened with physical injury, and/or that she was harmed when she observed the death or serious bodily injury of a family member, both of which are required for a "zone of danger" claim of negligent infliction of emotional distress under New York Law. *See Mortise v. United States*, 102 F.3d 693, 696 (2d Cir. 1996) (the "bystander in the zone of danger" theory permits recovery for emotional injuries inflicted when a party: (1) is threatened with physical harm as a result of the defendant's negligence; and (2) consequently suffers emotional injury from witnessing the death or serious bodily injury of a member of the party's immediate family). *See also Ling- Rong Chen v. City of Syracuse*, 2009 U.S. Dist. LEXIS 16227 at *18 (N.D.N.Y. 2009); *Stephens v. Shuttle Associates, LLC*, 547 F.Supp.2d 269, 275 (S.D.N.Y. 2008); *Madden v. Creative Servs.*, 872 F. Supp. 1205, 1211 (W.D.N.Y. 1993).

Accordingly, plaintiff's state law claims are dismissed.

## CONCLUSION

For the foregoing reasons, I find that there are no material issues of fact and that the defendants are entitled to judgment as a matter of law. Claire's motion for summary judgment dismissing the complaint (Dkt. #27) is granted, and plaintiff's cross motion for partial summary judgment (Dkt. #34) is denied. The complaint (Dkt. #1) is dismissed in its entirety, with prejudice. The defendants' cross-claims against one another (Dkt. #9, #12) are likewise dismissed as moot.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
       January 12, 2012.